**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 717 |
| | ) | |
| BRIAN K. LILLIE. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Court has before it the Government's motion *in limine* [52] to preclude Defendant Brian K. Lillie ("Lillie") from arguing, or otherwise presenting evidence suggesting, that he did not act with intent to defraud because he made false statements in good faith or with other beneficial motivation. For the reasons stated below, government's motion [52] is granted in part and denied in part.

**I.     Background**

On September 10, 2008, a federal grand jury returned a one-count indictment [1] against Defendants Lillie and Andre Johnson ("Johnson") charging them with mail fraud in violation of 18 U.S.C. § 1341.[1] The indictment charges that Johnson and Lillie engaged in a scheme to defraud the United States Department of Housing and Urban Development ("HUD"), Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), and two individuals, Pamela Moore ("Moore") and Jannice Hawkins ("Hawkins"), in connection with a HUD 203(k) program rehabilitation mortgage loan for a building located at 5358 South Wells Street in Chicago, Illinois ("the Wells Street Property"). According to the indictment, the 203(k) program is designed to allow purchasers of distressed property to obtain funding to cover the costs of rehabilitating the

---

[1] On October 22, 2009, Defendant Johnson entered a plea of guilty. The case remains set for trial on November 2, 2009 as to Defendant Lillie.

property. Under the program, loan funds allocated to rehabilitation are placed in an escrow account. Contractors hired to perform the rehabilitation work may be paid out of the escrow account before the entire rehabilitation is completed, but only for work that they actually have completed. The lending institution holding the escrow funds will release the funds only after receiving a "draw request" and a compliance inspection report, both of which must certify that the work for which the contractor is being paid has been completed. Draw requests must be signed by the contractor and the borrower, and the compliance inspection report must be signed by a HUD-certified 203(k) program inspector.

The indictment alleges that Moore and Hawkins purchased distressed property with a HUD 203(k) program rehabilitation mortgage loan and hired Johnson as the general contractor to complete the rehabilitation work. Moore and Hawkins also hired Lillie as a certified HUD inspector. Between July 23, 2003 and September 16, 2003, Lillie and Johnson submitted three draw requests (as well as three inspection reports and other documents) to the lending institution, Wells Fargo, thereby inducing Well Fargo to release more than $90,000 of funds from the escrow account. According to the indictment, the draw requests (executed by Moore, Hawkins, Lillie and Johnson) and inspection reports (signed by Lillie) falsely represented that Johnson had completed work on the property, when in fact the work had not been done. The government maintains that Lillie received approximately $480 of the more than $90,000 of funds released from the escrow account.

**II. Legal Standard**

District courts have broad discretion in ruling on evidentiary questions presented before trial through motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The power to exclude evidence *in limine* derives from the Court's authority to manage

2

trials. *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984). Evidence should be excluded *in limine* only where it is clearly inadmissible on all potential grounds. *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Thus, the party moving to exclude evidence *in limine* has the burden of establishing that the evidence is not admissible for any purpose. *Id.* Denial of a motion *in limine* does not mean that all evidence contemplated by the motion will be admitted at trial. *Id*. at 1401. Rather, denial simply means the court cannot determine whether the evidence in question should be excluded outside of the trial context. *United States v. Connelly,* 874 F.2d 412, 416 (7th Cir. 1989); *Broom v. Bozell, Jacobs, Kenyon & Eckhardt,* 867 F. Supp. 686, 690-91 (N.D. Ill. 1994). Accordingly, this Court will entertain objections as they arise at trial, even if the proffer falls within the scope of a motion *in limine* that has been denied. See also *Robenhorst v. Dematic Corp*., 2008 WL 1766525, at *2 (N.D. Ill. April 14, 2008).

Because motions *in limine* are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings *in limine* may be subject to alteration or reconsideration during the course of trial. *Connelly*, 874 F.2d at 416; see also *Luce*, 469 U.S. at 41-42 ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). In addition, if the *in limine* procedural environment makes it too difficult to evaluate an evidentiary issue, it is appropriate to defer ruling until trial. *Jonasson*, 115 F.3d at 440 (delaying until trial may afford the judge a better opportunity to estimate the evidence's impact on the jury).

**III.   Analysis**

Lillie is charged with mail fraud in violation of 18 U.S.C. § 1341.  The mail fraud statute prohibits devising a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and executing that scheme by use of the mails. 18 U.S.C. § 1341.  "A conviction must satisfy three elements: (1) the defendant's participation in a scheme to defraud; (2) the defendant's intent to defraud; and (3) the defendant's use of the mails in furtherance of the fraudulent scheme."  *United States v. Henningsen*, 387 F.3d 585, 589 (7th Cir. 2004).  The motion *in limine* at issue is directed at the second prong – whether Lillie acted with intent to defraud.

The Government contends that Lillie acted with intent to defraud if he knowingly submitted false draw requests in order to induce Wells Fargo to release the escrow funds, regardless of his subjective motivations.  According to the Government, whether Lillie did so in good faith and with a positive and beneficial intent, thinking that his actions ultimately were in the best interest of all parties, including the bank, is irrelevant.  Indeed, according to the Government, any argument by Lillie that he had good intentions could be designed only to invite jury nullification, and therefore must be barred at trial.

Lillie responds that mail fraud is a specific intent crime, and therefore the government must show more than that he knowingly told a material lie; it also must prove that he did so in order to cause a gain of money or property to himself or the potential loss of money or property to another.  According to Lillie, he does not plan to argue that he lacked intent to defraud because he acted with good motives, but rather because he neither acted to benefit himself, nor intended to cause anyone a loss.  Rather, he believed, among other things, that the money belonged to the borrowers and that they asked him to submit the draw requests.  Lillie contends

4

that he must be permitted to tell the jury what he intended at the time that he submitted the draw requests.

The Seventh Circuit "has found that to act with intent to defraud means to act 'willfully and with specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another.'" *Henningsen*, 387 F.3d at 590-91. Therefore, the Seventh Circuit pattern jury instructions provide that "'intent to defraud' means the acts charged were done knowingly with the intent to deceive or cheat the victim in order to cause a gain of money or property to the defendant or the potential loss of money or property to another." The pattern instruction references "potential loss" because the mail fraud statute does "not require the government to prove either contemplated harm to the victim or any loss." *United States v. Leahy*, 464 F.3d 773, 786-87 (7th Cir. 2006). It is sufficient to show that the defendant intended to impose a substantial risk of loss on another person of which that person is unaware. See *United States v. Catalfo*, 64 F.3d 1070, 1079 (7th Cir. 1995) ("the intent to impose a large risk on another person through deliberate misrepresentation could constitute the requisite intent to sustain a conviction under mail and wire fraud statutes"); *United States v. Davuluri*, 239 F.3d 902, 906 (7th Cir. 2001) ("Exposing the victim to a substantial risk of loss of which the victim is unaware can satisfy the intent requirement.").

"Intent to defraud can be proven by circumstantial evidence and by inferences drawn from the scheme itself." *United States v. Moede*, 48 F.3d 238, 241-42 (7th Cir. 1995). "Circumstantial evidence of intent to defraud includes such conduct as knowingly depositing a forged check, knowingly depositing an NSF check, knowingly writing checks on an inadequate account balance, violating bank rules, and providing falsified information on loan documents." *Id.*

### A. Admissibility of Good Faith Evidence Generally

Because mail fraud is a specific intent crime, defendants generally are "entitled to introduce evidence of good faith or absence of intent to defraud." *United States v. Warner*, 498 F.3d 666, 691 (7th Cir. 2007) (citing *United States v. Longfellow,* 43 F.3d 318, 321 (7th Cir. 1994)). However, a defendant's entitlement is not unfettered. Evidence of a defendant's claimed good intentions is admissible only where it is relevant to the question of intent to defraud. See *Longfellow*, 43 F.3d at 321-22 (explaining that under Seventh Circuit precedent "proper evidence of good faith should be admitted," but that the cases "do not require that any evidence, no matter how tangential, irrelevant or otherwise inadmissible, must be admitted simply because the defendant claims that it establishes his good faith").

It is well-established that if a person obtains money through fraud, his intent to return the money or otherwise make the victim whole is not a defense, and has no bearing on whether he acted with intent to defraud. See *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) ("[i]t is well settled that a defendant's ultimate intention to pay off a debt obtained fraudulently is irrelevant to the intent to obtain the money through deceptive means"); *Leahy*, 464 F.3d at 787 ("a defendant's honest belief that his actions will ultimately result in a profit and not a loss is irrelevant for determining whether a violation [of the mail fraud statute] has occurred"); see also *United States v. Hamilton*, 499 F.3d 734, 736 (7th Cir. 2007) (approving use of jury instruction in mail fraud case stating that "if money or property is obtained through knowingly false representations, the scheme to defraud is established, regardless of whether the defendant hoped, intended, or even expected that the victims would eventually be satisfied"). Put differently, evidence that a defendant planned or hoped to repay fraudulently obtained money is not relevant to the question of intent to defraud.

For this reason, the Seventh Circuit has found that where a defendant has obtained funds by making false statements, the district court may exercise its discretion to exclude evidence of the defendant's intent to repay his victims or make them whole. See *United States v. Stafford*, 136 F.3d 1109, 1112 (7th Cir. 1998) (district court did not err in excluding evidence relating to defendants' good faith defense that they intended to obtain loans for victims with money fraudulently obtained from those victims, where they obtained money "by means of lies"); *Radziszewski*, 474 F.3d at 485-86 (district court did not abuse its discretion in excluding defendant's good-faith defense that he intended to "pay off a debt obtained fraudulently," because "intention to repay * * * can undo neither the fraud nor injury caused by wrongly depriving [the victim] of its funds" in the interim); *United States v. Masquelier,* 210 F.3d 756, 759 (7th Cir. 2000) ("district court was well within its discretion to exclude any evidence of" defendant's good intentions with regard to fraudulently obtained funds, because "[f]raud is complete when the defendant obtains money by false pretenses"). The court of appeals has made clear that district courts can and "should" exclude evidence of a defendant's intent to repay fraudulently obtained funds because it is "irrelevant" to the defendant's fraudulent intent. *United States v. Spirk*, 503 F.3d 619, 621 (7th Cir. 2007) (where defendant obtained investors' money by knowingly making false representations, district court "should have" prevented defendant from arguing that "his fervent belief in [the investments'] long-run prospects, and his desire to repay, entitle[d] him to a judgment of acquittal"). Similarly, where a defendant intentionally exposes another to an increased risk of loss of which that person is unaware, the defendant's hope that the risk will never materialize is irrelevant to the question of intent to defraud. *Id.* at 621-22 (defendant's hope that high-risk investments would return a profit is irrelevant where defendant exposed investors to greater risk than they agreed to accept).

7

### B. Admissibility of Good Faith Evidence Offered by Lillie

The Government contends that any good faith evidence Lillie might offer at trial would fall squarely under the line of cases discussed above, and therefore should be excluded. At its core, the Government's motion seeks to exclude testimony and evidence of good faith on relevance grounds. The Government correctly observes that some good faith arguments that Lillie conceivably could advance are foreclosed by Seventh Circuit precedent. For example, Seventh Circuit case law indicates that Lillie should be barred from arguing that he lacked the requisite intent to defraud because although he knew that the bank was being deprived of its money, he thought that the money eventually would be repaid because Mr. Johnson would complete the rehabilitation work or because an alternative source of funds would materialize.[2] Similarly, any argument by Lillie that he perceived an increased risk of loss to the bank that it had not agreed to accept, but did not think that risk would materialize should be excluded as irrelevant.[3]

---

[2] See *Radziszewski*, 474 F.3d at 485; *Stafford*, 136 F.3d at 1112; *Masquelier,* 210 F.3d 756, 759 (where defendant admittedly made false representations to the government in order to obtain money to which he knew he was not entitled under a contract with the government, district court properly excluded evidence that he planned to follow through on the contract).

[3] See *Spirk*, 503 F.3d at 621-22; *United States v. Dunn*, 961 F.2d 648, 650 (7th Cir. 1992) (where defendant fraudulently obtained funds from investors, approving use of jury trial stating: "[i]f you find that the Defendant acted with an intent to defraud, * * * then it is no defense that the Defendant believed that [the investment] would eventually succeed"); *Moore v. United States*, 2 F.2d 839, 842 (7th Cir. 1924) (defendants' hope and belief that the enterprise "would meet with a high degree of success, which would abundantly repay every investor to the full, and that it was not the intent and purpose that any one should ultimately sustain a loss through investing in the company's stock" does not "absolve [defendants] from criminal responsibility for the making of false representations for procuring capital"); *Linn v. United States*, 234 F. 543, 552 (7th Cir. 1916) (defendant possessed intent to defraud, despite his honest belief that he would generate profits for investors, where he induced them to invest by knowingly making false representations of material facts); *Pandolfo v. United States*, 286 F. 8, 13 (7th Cir. 1923) ("if we concede [defendant's] absolute belief that the company would eventually * * * [be profitable], if it could secure the necessary capital, this would not justify him in securing the capital from others by means of false and fraudulent representations and promises").

However, Lillie contends that he does not plan to advance any of these prohibited arguments. Rather, Lillie proposes to testify that he lacked intent to defraud because he did not act in order to cause a gain to himself or a potential loss to another. Specifically, Lillie claims that the small portion of the funds that went to him – by the Government's estimation, approximately $480 of the more than $90,000 of funds released from the escrow account – was too *de minimis* to motivate him to act, and thus he did not act with the specific intent of causing a gain to himself. Moreover, Lillie contends that he did not understand that his actions would or could expose anyone to a greater risk of loss than they had agreed to accept. According to Lillie, he believed that the money belonged to the borrowers, and that they were entitled to it for use in the rehabilitation project. Furthermore, he maintains that he understood that the released funds would be used for a proper purpose – payment of rehabilitation costs – and that the borrowers had asked him to sign the draw requests in order to secure the release of the funds and thus were aware that the funds might in fact be released.

The Court concludes that the cases relied on by the Government do not foreclose Lillie from advancing these sorts of arguments at trial – namely, that the reason that he submitted the false draw requests was because he was misled, misunderstood the likely consequences of his actions, did not understand who the money belonged to (and thus who bore the risk of non-payment), and/or otherwise lacked business acumen. To the contrary, the cases cited by the Government indicate that defendants are permitted to make such arguments at trial in order to contest the issue of intent to defraud. See *Radziszewski*, 474 F.3d at 486 (noting that the district court precluded defendant from arguing "that his intent to repay Washington Mutual Bank somehow negated any intent to defraud," but "permitted the defendant to invoke other good-faith arguments, including his argument that he acted as an innocent translator and that other parties

9

were responsible for any fraud"); *United States v. Britton*, 289 F.3d 976, 980 (7th Cir. 2002) ("disputed issues" at trial included "whether [defendant's] actions were due to lack of business experience," such that she did not realize that she was spending clients' funds, "or whether they were due to a fraudulent intent"); *United States v. Frost*, 281 F.3d 654, 656 (7th Cir. 2002) (defendants "argued at trial that their conduct was appropriate"); *Moede*, 48 F.3d at 242 ("Moede's claim of a good faith intent to benefit the bank is meritless and has clearly been rejected by the jury"). In *Radziszewski*, *Britton*, *Frost*, and *Moede*, the juries disbelieved the good faith evidence, and the court of appeals found that there was sufficient evidence to support a finding of intent to defraud. However, in none of these cases did the Seventh Circuit suggest, much less hold, that the district courts erred in allowing the defendants to present, within the bounds of relevance, their "good faith" arguments at trial in order to contest the intent element of the charged crime.

The Government relies on a number of cases in which defendants challenged fraud convictions on the grounds that the prosecution had not presented sufficient evidence of intent to defraud. See *United States v. Castaldi*, 547 F.3d 699 (7th Cir. 2008) (defendant argued that he was not a willful participant in the fraudulent scheme); *Britton*, 289 F.3d at 982 (defendant claimed she "did not realize that she was spending clients' funds or that her actions were improper"); *Davuluri*, 239 F.3d 902 (7th Cir. 2001) (defendant argued that he "always intended only to earn profits for Dr. Raju, rather than imposing any kind of loss on him" and that "he sought no benefit for himself"); *Moede*, 48 F.3d at 242 (defendant argued "that there was no intent to defraud because he never sought to obtain anything of value for himself"). The Seventh Circuit rejected each of these challenges, finding that a reasonable jury could have concluded that the defendants acted with intent to defraud because the evidence gave rise to an inference

10

that the defendant either knew he was taking money that did not belong to him,[4] or knew that his actions exposed another person to a substantial risk of loss.[5]

Similarly, here, the Government contends that the evidence will show that Lillie knowingly submitted false draw requests. Such evidence *may* give rise to an inference of intent to defraud. See *Moede*, 48 F.3d at 241-42 ("[i]ntent to defraud can be proven by circumstantial evidence" such as "knowingly depositing a forged check, knowingly depositing an NSF check, knowingly writing checks on an inadequate account balance, violating bank rules, and providing falsified information on loan documents"). But that is an inference for the jury to make, not the Court. Evidence that Lillie imposed a substantial risk of loss on the bank does not conclusively establish intent to defraud. As the Seventh Circuit succinctly has put it, evidence "that a defendant[] impos[ed] risk on another person does not necessarily mean that the defendant had the intent to defraud the other person." *Catalfo*, 64 F.3d at 1079. Rather, as the Seventh Circuit explained in *Catalfo*, "that factual scenario merely provides a reasonable juror a way, albeit a rather convincing way, to infer the intent." *Id.*; see also *Davuluri*, 239 F.3d at 906 (explaining that "[e]xposing the victim to a substantial risk of loss of which the victim is unaware *can* satisfy the intent requirement" and holding on the facts of the case that "a reasonable jury could infer that Davuluri deceived Dr. Raju and exposed Dr. Raju to a much greater risk than what he had promised the cardiologist") (emphasis added). At the same time, as the case law discussed above

---

[4] See *Castaldi*, 547 F.3d 699 (refusing to "conclude that no rational finder of fact could find that Castaldi entered into a scheme to defraud * * * given that he took money he was not rightfully owed from the account * * * and that, given his knowledge of the proper procedures to follow with such funds, he did so knowing it did not belong to him."); *Britton*, 289 F.3d 976, 982 (7th Cir. 2002) (the evidence supported the jury's conclusion that defendant "knew she was spending clients' funds").

[5] See *Davuluri*, 239 F.3d at 906 (defendant "was a knowledgeable trader and the jury could have inferred that he knew the high levels of risk to which he was subjecting the account"); *Moede*, 48 F.3d at 242 (defendant "knowingly placed the bank's trust fees and the assets of customer accounts at risk in his investment scheme").

11

makes clear, Lillie may try to refute that inference by testifying as to his intent at the time that he submitted the draw requests, so long as his testimony remains within the bounds of relevancy as established by the Seventh Circuit.

## IV.    Conclusion

For the reasons stated above, the Government's motion *in limine* to preclude Lillie from arguing, or otherwise presenting evidence suggesting, that he did not act with intent to defraud because he made false statements in good faith or with other beneficial motivation is granted in part and denied in part.  Lillie is precluded from testifying or otherwise arguing that he lacked intent to defraud because he thought that the bank eventually would be repaid, that the risk to which he exposed the bank would not materialize, or that Mr. Johnson eventually would complete the rehabilitation work.  However, Lillie is not barred from testifying that, at the time that he submitted the draw requests, he misunderstood the likely consequences of his actions, did not understand who the money belonged to, lacked business acumen, and/or was misled as to what work had been done or was in progress at the property such that other parties were responsible for any fraud.  Such testimony is not barred as irrelevant under Seventh Circuit precedent, but of course remains subject to cross-examination by the Government at trial.

Dated:  October 28, 2009    _____
                                                            Robert M. Dow, Jr.
                                                            United States District Judge