**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 717-2 |
| | ) | |
| BRIAN K. LILLIE | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Government's *Santiago* Proffer [43], which describes the Government's basis for asserting the existence of a conspiracy or joint venture between Defendant Brian K. Lillie ("Lillie") and Andre D. Johnson ("Johnson"). Through its *Santiago* Proffer, the Government proposes to offer evidence of co-conspirator statements made by Johnson against Lillie under Federal Rule of Evidence 801(d)(2)(E). Lillie has filed a response [45] objecting to the admission of Johnson's out of court statements as evidence against him under Rule 801(d)(2)(E). As explained in greater detail below, during the final pre-trial conference held on October 22, 2009, and the subsequent status conference on October 27, 2009, the parties clarified their positions on this aspect of the case and the rather discreet issues that remain for disposition prior to trial.

**I.     Background**

On September 10, 2008, a federal grand jury returned a one-count indictment [1] against Defendants Lillie and Andre Johnson ("Johnson") charging them with mail fraud in violation of 18 U.S.C. § 1341.[1] The indictment charges that Johnson and Lillie engaged in a scheme to defraud the United States Department of Housing and Urban Development ("HUD"), Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), and two individuals, Pamela Moore ("Moore") and

---

[1] On October 22, 2009, Defendant Johnson entered a plea of guilty. The case remains set for trial on November 2, 2009 as to Defendant Lillie.

Jannice Hawkins ("Hawkins"), in connection with a HUD 203(k) program rehabilitation mortgage loan for a building located at 5358 South Wells Street in Chicago, Illinois ("the Wells Street Property"). According to the indictment, the 203(k) program is designed to allow purchasers of distressed property to obtain funding to cover the costs of rehabilitating the property. Under the program, loan funds allocated to rehabilitation are placed in an escrow account. Contractors hired to perform the rehabilitation work may be paid out of the escrow account before the entire rehabilitation is completed, but only for work that they actually have completed. The lending institution holding the escrow funds will release the funds only after receiving a "draw request" and a compliance inspection report, both of which must certify that the work for which the contractor is being paid has been completed. Draw requests must be signed by the contractor and the borrower, and the compliance inspection report must be signed by a HUD-certified 203(k) program inspector.

The indictment alleges that Moore and Hawkins purchased distressed property with a HUD 203(k) program rehabilitation mortgage loan and hired Johnson as the general contractor to complete the rehabilitation work. Moore and Hawkins also hired Lillie as a certified HUD inspector. Between July 23, 2003 and September 16, 2003, Lillie and Johnson submitted three draw requests (as well as three inspection reports and other documents) to the lending institution, Wells Fargo, thereby inducing Wells Fargo to release more than $90,000 of funds from the escrow account. According to the indictment, the draw requests (executed by Moore, Hawkins, Lillie and Johnson) and inspection reports (signed by Lillie) falsely represented that Johnson had completed work on the property, when in fact the work had not been done. The Government maintains that Lillie received approximately $480 of the more than $90,000 of funds released from the escrow account.

**II.     Legal Standard Governing the Admission of Co-conspirator Statements**

Under Rule 801(d)(2)(E) of the Federal Rule of Evidence, statements made by a co-conspirator during the course and in furtherance of the conspiracy are not hearsay. *United States v. Williams,* 44 F.3d 614, 617 (7th Cir. 1995). Rule 801(d)(2)(E) applies not only to conspiracies, but also to joint ventures.[2] *United States v. Kelly*, 864 F.2d 569, 573 (7th Cir. 1989). Consequently, a formal conspiracy charge is not a prerequisite for the admission of statements under Rule 801(d)(2)(E), if the government establishes that a "criminal venture existed and that the statements took place during and in furtherance of that scheme." *United States v. Reynolds,* 919 F.2d 435, 439 (7th Cir. 1990); *Kelly,* 864 F.2d at 573. For a statement to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence that (1) a conspiracy (or joint venture) existed; (2) the defendant and the person making the statement were members of the conspiracy (or joint venture); and (3) the statement was made during the course and in furtherance of the conspiracy (or joint venture). *United States v. Brookins,* 52 F.3d 615, 623 (7th Cir. 1995); *United States v. Stephens,* 46 F.3d 587, 597 (7th Cir. 1995).

Generally, district courts make a ruling on the admissibility of a co-conspirator's statements pursuant to Rule 104(a) before they are admitted at trial. *United States v. Santiago,* 582 F.2d 1128, 1130-35 (7th Cir. 1978); *United States v. Cox,* 923 F.2d 519, 526 (7th Cir. 1991). In determining both the existence of a conspiracy (or joint venture) and a defendant's participation in it, the court can consider the statements sought to be admitted. *Williams,* 44 F.3d at 617; see also *Bourjaily v. United States,* 483 U.S. 171, 180 (1987). While the admissibility of conspirators' declarations "is not contingent on demonstrating by non-hearsay evidence either the conspiracy or a given defendant's participation," *United States v. Martinez de Ortiz,* 907 F.2d

---

[2] The Court thus will use the terms "conspiracy" and "joint venture" interchangeably in this opinion.

629, 634 (7th Cir. 1990) (en banc), the contents of the proffered co-conspirator statements "are not alone sufficient" to establish the existence of a conspiracy and a defendant's participation in it. Fed. R. Evid. 801(d)(2)(E). In addition to the co-conspirator statements themselves, the Court must consider the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or the evidence corroborating the contents of the statement. *United States v. Zambrana,* 841 F.2d 1320, 1344-45 (7th Cir. 1988).

"To show that a defendant was involved in the conspiracy, the government must show that he '(1) knew of the conspiracy, and (2) intended to associate himself with the criminal scheme.'" *United States v. Stephenson*, 53 F.3d 836, 843 (7th Cir. 1995) (quoting *United States v. Sullivan,* 903 F.2d 1093, 1098 (7th Cir. 1990)). However, "[t]he government is not required to prove that there was a formal agreement, and circumstantial evidence indicating the defendant's membership in the conspiracy can also be considered." *Id.* (citing *United States v. Schumpert*, 958 F.2d 770, 773 (7th Cir. 1992)).

## III.  The Government's *Santiago* Proffer

With these standards in mind, the Court considers whether the Government has shown by a preponderance of the evidence that a joint venture existed between Lillie and Johnson, and whether the co-conspirator statements that it seeks to admit were made in furtherance of that joint venture.

The Government indicates that its evidence will show the following. In July 2003, Wells Fargo issued a home loan to Moore and Hawkins in the total amount of $305,950. Of that sum, $171,253.00 was set aside in an escrow account for rehabilitation work. Moore and Hawkins hired Johnson as the contractor to perform the rehabilitation work and Lillie as the HUD-certified inspector. Johnson and Lillie signed and submitted to the bank three draw requests –

4

dated July 23, 2003, August 30, 2003, and September 10, 2003 – seeking the release of rehabilitation funds from the escrow account. Each draw request listed costs expended with regard to various portions of the rehabilitation work. Lillie faxed each draw request, along with a certified inspection report signed by him and a lien waiver form executed by Johnson, to Wells Fargo. Both the draw requests and the inspection reports certified that certain work had been completed on the property, when in fact the work had not been completed. Following the submissions of the draw requests, Wells Fargo issued checks to Johnson's contracting company and to Lillie. Lillie received approximately $480 of the more than $90,000 of funds released from the escrow account.[3]

### A. Existence of and Membership in a Joint Venture

Based on the evidence discussed above, the Court concludes that the Government has demonstrated, by a preponderance of the evidence, that Lillie and Johnson entered into a joint venture to make misrepresentations to the bank, thereby fraudulently inducing it to release the escrow funds. In particular, the three draw requests signed by Lillie and Johnson, Lillie's admission to the agent that he knew the work had not been completed when he signed those draw requests, Lillie's statement that he signed the draw requests because Johnson claimed the money would allow him to complete the work, and the fact that the bank could not have released the funds without the signatures of both Lillie and Johnson show that it is more likely than not that Lillie and Johnson agreed to misrepresent to the bank that the work had been done in order to induce the bank to release the funds. Put differently, the proffered evidence is sufficient to

---

[3] In its proffer, the Government sought to admit against Johnson statements that Lillie made to federal agents regarding the project, in which he admitted that the work had not been done and that he was aware of that fact when he filled out the draw request and inspection report documents. According to the Government, Lillie also told investigators that he submitted the false draw requests with the hope of making the project succeed because Johnson claimed the money would allow him to complete the work. Of course, any use of these statements against Johnson is now moot in light of Johnson's plea of guilty in this case.

5

establish by a preponderance of the evidence that Lillie and Johnson were engaged in a "joint venture," "combination," *United States v. Coe*, 718 F.2d 830, 835 (7th Cir. 1983), or "partnership," *United States*, 604 F.2d 546, 549 (7th Cir. 1979), to submit false information to Wells Fargo in order to induce it to release the escrow funds.

The Government's proffer also is sufficient to establish that – more likely than not – Lillie intended to associate himself with the joint venture and its criminal purpose. *United States v. Arvanitis*, 902 F.2d 489, 500 (7th Cir. 1990). Lillie's statements to investigators indicate that he participated in the joint venture by signing the draw requests, despite knowing that the work had not been completed, and that he did so in order to get the bank to release the funds. See *United States v. Hunt*, 272 F.3d 488, 495 (7th Cir. 2001) (requiring "a 'participatory link' between the conspiracy and the defendant").

"The fact that much of [the Government's] evidence [is] circumstantial is beside the point." *United States v. Kaden*, 819 F.2d 813, 819 (7th Cir. 1987). Indeed, the Seventh Circuit has recognized that, "because of the secretive character of conspiracies, direct evidence is elusive, and hence the existence and the defendants' participation can usually be established only by circumstantial evidence." *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir. 1983).

### B. Statements Made During the Course and in Furtherance of the Joint Venture

Having determined the existence of and Lillie's membership in a joint venture with Johnson, the Court must determine whether the statements that the Government seeks to admit were made during the course and in furtherance of that joint venture. *Brookins*, 52 F.3d at 623. The Government seeks to admit (1) statements made by Johnson to Moore and Hawkins in connection with the first draw request to the effect that he needed the funds to make the project succeed or intended to finish the project; (2) similar statements made by Johnson to Moore and Hawkins in connection with the third draw request; (3) Johnson's January 2004 statements to

6

Michael Savage ("Savage"), who was hired to inspect the property, regarding the expenses he had incurred in connection with the property; and (4) Johnson's repeated assurances to Moore and Hawkins that Johnson intended to complete the project, including that he had purchased windows and hired an electrical contractor.

As counsel clarified at the October 27 status, many of the matters raised in the briefing are no longer in dispute. As noted above, any concerns about the use of statements made by Lillie against Johnson have been eliminated by Johnson's guilty plea. In addition, the Government has acknowledged the hearsay problems associated with any attempt to introduce for the truth of the matters asserted any statements made by Johnson to one of the homeowners, Ms. Moore, who is now deceased. And Lillie has clarified that his principal objection is not to statements made by Johnson concerning the draw requests and the work that he claimed to have performed at the property up to the time that Lillie's involvement in the project ended around November 2003. Thus, the core issue that remains before the Court for decision is Lillie's continuing objection to any use of statements that Johnson made to Michael Savage in January 2004. Accordingly, the Court confines its further analysis to those statements, which both sides characterize as "concealment" statements designed to cover up the fact that no work had been done on the Wells Street property.

Both the Supreme Court and the Seventh Circuit have held that "[o]nce the coconspirators achieve the goals of the conspiracy, statements concerning acts of concealment (or to avoid punishment) are generally inadmissible." *United States v. Gajo*, 290 F.3d 922, 928 (7th Cir. 2002) (citing *Grunewald v. United States,* 353 U.S. 391, 405-06 (1957)). The rationale for this general prohibition is that "the act of concealment typically is not part of a conspiracy's primary criminal objective," and therefore statements designed to conceal the conspiracy are not

7

made "in furtherance of" the conspiracy. *Gajo*, 290 F.3d at 928. There is an exception to that general rule: where "concealment is actually one of the main criminal objectives" of the joint venture, concealment statements are considered to be in furtherance of the on-going joint venture, and thus admissible under Rule 801(d)(2)(E). *Id.* See also *Grunewald,* 353 U.S. at 405 ("a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime"). For example, concealment is a main criminal objective of "an arson-for-profit scheme, because it facilitates the primary objective of fraudulently acquiring insurance proceeds." *Gajo*, 290 F.3d at 928; see also *Kaden*, 819 F.2d at 820 (district court properly admitted concealment statements in arson-for-profit scheme because they were made to ensure that the insurance claim would be paid, which was the goal of the conspiracy, and thus were made in furtherance of the conspiracy); *United States v. Xheka,* 704 F.2d 974, 985-86 (7th Cir. 1983) (same).

In drawing the line between concealment statements made in furtherance of the main criminal objectives of the conspiracy, and those made after these central objectives have been obtained, the *Grunewald* Court "distinguished the situation in which kidnappers conceal their crime (and their victim) while waiting for payment of the ransom from that in which the ransom has been paid and the kidnappers continue to conceal their involvement to avoid punishment." *Xheka*, 704 F.2d at 986. "In the former, but not the latter, the acts of concealment further the object of the conspiracy – obtaining money – and result in lengthening its duration." *Id.* The circumstances here are analogous to the case of kidnappers who already have received their ransom. The three draw requests were made on July 23, 2003, August 30, 2003, and September 10, 2003. The final check from the bank releasing funds from the escrow account was dated

8

September 16, 2003. Therefore, the objective of the joint venture – securing the release of the funds from the bank – was achieved months before the statements at issue were made in January 2004. And there is no evidence that Johnson and Lillie planned to execute additional draw requests after January 2004, such that Johnson's statements to Savage were designed to "control the damage to the ongoing conspiracy," *United States v. Van Daal Wyk,* 840 F.2d 494, 499 (7th Cir. 1988), or to "prolong the life of the conspiracy by protecting its secrecy," *United States v. Markowski*, 772 F.2d 358, 366 (7th Cir. 1985). To the contrary, according to the Government's own witness, Hawkins, Lillie was not associated with the Wells Street Property after November 2003.

At best, the evidence indicates that Lillie did not notify the authorities about the false draw requests, and in that way sought to keep the joint venture secret. The evidence also shows that Lillie was no longer actively involved in the project by November 2003, by which time his certification as a HUD inspector had been revoked. It is well established that "a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment," because "allowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely." *Grunewald,* 353 U.S. at 403. Because the Government has not shown by a preponderance of the evidence that concealment was a goal of the joint venture between Johnson and Lillie – and thus that the statements made (or not made) or actions taken (or not taken) by Johnson and/or Lillie concerning any attempts to conceal the alleged misstatement to the bank were made in furtherance of the joint venture – Johnson's statements to Savage are not admissible against Lille

9

under Rule 801(d)(2)(E). See *United States v. Mackey*, 571 F.2d 376, 383 (7th Cir. 1978) ("in determining whether there has been an agreement to conceal, * * * there must be more than 'circumstantial evidence showing merely that * * * the conspirators took care to cover up their crime in order to escape punishment'") (quoting *Grunewald*, 353 U.S. at 402).

**VI.     Conclusion**

For the reasons stated above, the Court finds that Johnson's January 2004 statements to Savage are not admissible against Lille under Rule 801(d)(2)(E). Consistent with the discussion at the October 27 status hearing and the remainder of this opinion, the Government may introduce under Rule 801(d)(2)(E) Johnson's statements to Hawkins in connection with the draw requests and in regard to work that he claimed to have performed at the property up to the time that Lillie's involvement in the project ended; however, the statements made by Johnson to Savage in January 2004 are not admissible under Rule 801(d)(2)(E).

Dated:  October 29, 2009  
　　　　　　　　　　　　　　　　　　　　　Robert M. Dow, Jr.  
　　　　　　　　　　　　　　　　　　　　　United States District Judge